

**Celena Mayo**
212.915.5854 (direct)
celena.mayo@wilsonelser.com

**Aaron Bengart**
212.915.5921 (direct)
aaron.bengart@wilsonelser.com

July 24, 2026

**VIA ECF**
Hon. Eric R. Komitee, USDJ
US District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

|  | Re: | **Avila Jimenez, et al.** | **v.** | **Ayat LLC, et al.** |
|---|---|---|---|---|
|  |  | **EDNY Case No.** | **:** | **25-cv-06346-EK-CHK** |
|  |  | **Our File No.** | **:** | **26455.00063** |

Dear Judge Komitee:

This firm represents Defendants Fatta Mano Inc. ("Fatta Mano"), Ayat 36, Inc. ("Ayat 36"), and Abdelrahman Elenani (s/h/a Elenani Abdelrahman, a/k/a Abdul Rahman Elenani, a/k/a Abdul Elenani) (collectively, "Defendants") in the referenced matter. This letter is submitted jointly with counsel for Plaintiffs Johan Santiago Avila Jimenez ("Avila Jimenez") and Senon Martinez Montoya ("Montoya") (collectively, the "Plaintiffs").[1]

The parties respectfully write to advise the Court that they have reached a settlement in this matter and jointly move for approval of the settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) ("*Cheeks*"). A copy of the fully executed Negotiated Settlement Agreement and Release (the "Agreement") is attached hereto as Exhibit A.

## I.        Background and Settlement

Plaintiffs filed this action on November 14, 2025, alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), including claims for unpaid minimum wages, overtime, wage notice and statement violations, tip theft/unlawful deductions, and spread-of-hours pay.

Defendants Fatta Mano and Ayat 36 are two separately incorporated restaurants owned by Defendant Mr. Elenani. Ayat, LLC is an entity not affiliated with Mr. Elenani, Fatta Mano, or Ayat 36 and was voluntarily dismissed as such by Plaintiffs on May 29, 2026. (Dkt. 32)

Plaintiffs provided services to the restaurants.  As to Plaintiff Avila Jimenez, he was employed as a server by Ayat 36 from approximately October 2024 through January 2025.  Defendants assert that his rate of pay corresponded with local statutory requirements.  As to Plaintiff Montoya, he was engaged by Fatta Mano as a meat prep cook pursuant to a Vendor Agreement from

---

[1] Plaintiffs and Defendants shall collectively be referred to as the "Parties."

approximately September 2021 to July 2024.  Defendants assert that he was compensated in accordance with the Vendor Agreement.

On March 3, 2026, Plaintiffs filed an Amended Complaint.  Defendants filed their Answer to the Amended Complaint on March 24, 2026. In sum, the parties dispute, *inter alia*, the terms under which the Plaintiffs provided services to the restaurants, the hours Plaintiffs worked, and the remuneration allegedly owed.

In advance of a scheduled settlement conference before Hon. Clay H. Kaminsky the parties engaged in extensive settlement negotiations beginning in March 2026. After multiple rounds of offers and counteroffers over the ensuing months, the parties agreed to the following settlement arrangement (the "Agreement"): (i) Defendants shall pay a total of $90,000.00 in monthly installments, with the final payment due by December 12, 2026 subject to the Court's endorsement of the Agreement pursuant to *Cheeks*; (ii) in the event Defendants fail to make payment when due, Plaintiffs' counsel shall provide written notice of default to Defendants' counsel, and Defendants shall have fourteen (14) days from receipt of such notice to cure the deficiency; (iii) in the event of an uncured default, Defendants shall be liable for two times (2x) the remaining unpaid settlement amount, less any amounts already paid, together with Plaintiffs' reasonable attorneys' fees and costs incurred in connection with the enforcement of the Agreement.

The settlement is objectively fair, reasonable, and the product of arm's length negotiations between experienced counsel. For these reasons and those set forth in further detail below, the settlement should be approved.

## II.    Fairness of the Settlement

In evaluating whether to approve of an FLSA settlement, courts in this Circuit consider the totality of the circumstances, including: (1) the plaintiffs range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Palwinder Singh v. Anmol Food mart, Inc.*, 768 F Supp 3d 434, 443 (E.D.N.Y. 2025) (citing *Wolinsky v. Scholastic Inc.*, 900 F Supp 2d 332, 335 (S.D.N.Y. 2012). Courts also scrutinize whether the agreement contains problematic provisions such as overbroad releases, confidentiality clauses, or non-disparagement terms. *Cheeks*, 796 F.3d at 206. Additionally, "courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects reasonable compromise over contested issues, the court should approve the settlement." *Palwinder Singh v. Anmol Food mart, Inc.*, 768 F Supp 3d 434, 445 (E.D.N.Y. 2025); *Snead v. Interim Healthcare of Rochester, Inc.*, 286 F Supp 3d 546, 552 (W.D.N.Y. 2018) ("Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement.").

The parties respectfully submit that the settlement satisfies each of these factors and should be approved for the following reasons:

### A.  The Agreement Fairly Accounts for Plaintiffs' Possible Recovery

As noted above, Plaintiffs will receive $90,000.00, which represents a substantial recovery relative to Plaintiffs' range of possible recovery. After attorneys' fees and costs Plaintiffs will receive payments totaling $59,566.40 (*i.e.,* $29,783.20 each).

Plaintiffs' initial demand totaled $172,601.96. Defendants' analysis of exposure was significantly less than the demand. The Agreement exceeds Defendants' estimated exposure and represents approximately 52% of Plaintiffs' full demand, inclusive of unpaid wages, liquidated damages, wage notice violations, wage statement violations, and prejudgment interest. Courts routinely approve FLSA settlements falling within this range. *See Polyakov v Pen Enters.*, 786 F Supp 3d 557 (E.D.N.Y. 2025) (net settlement of 29.3% of FLSA Plaintiff's maximum recovery is reasonable); *Cronk v Hudson Val. Roofing & Sheetmetal, Inc.*, 538 F Supp 3d 310, 323 (S.D.N.Y. 2021) (net settlement of 13% of FLSA Plaintiff's maximum recovery is reasonable).

Moreover, the Agreement does not contain a confidentiality provision, a general release, or a non-disparagement clause; it is limited to claims for remuneration in exchange for services performed. Thus, it is apparent that the settlement amount fairly accounts for Plaintiffs' possible recovery in this matter.

### B.  The Risk and Expenses Faced by the Parties

Both Parties in this matter face substantial risks in proceeding forward in this litigation.

Defendants are confident that they could prevail at trial on their defenses, particularly given Plaintiffs' failure to produce a single document in support of their allegations. Additionally, if Defendants did so prevail, Plaintiffs face the possibility of receiving no recovery at all. Further, Plaintiffs face the prospect of waiting months, if not years, for the matter to proceed through discovery, motion practice, and, eventually, trial. While Defendants are confident that they would be able to severely undermine, if not defeat, Plaintiffs' claims, they are also mindful that this would have only occurred after a protracted litigation at significant financial defense costs.

Conversely, if Plaintiffs prevail at trial, Defendants could face significant liability for unpaid wages, civil penalties, interest, and attorneys' fees and costs. Thus, the costs of litigation and prospects of liability for Defendants clearly weigh in favor of early resolution. Also, even though it is not necessarily a factor under *Wolinsky,* the Court should also not lose sight of the fact that litigation imposes a mental toll upon both Plaintiffs and Defendants no matter who wins or loses. *See Almanzar v. Silver Star Props. Corp.*, 699 F Supp 3d 253, 255-56 (S.D.N.Y. 2023) ("there are burdens to all sides in pursuing litigation, including the need to participate in discovery and appear for trial, as well as the inevitable delay in receiving payment.); *Brown v. TD Bank, N.A.*, 2016 WL 1298973 (E.D. Pa. 2016*)* ("Litigation is expensive, time-consuming, and emotionally draining."). Settlement ameliorates this burden too. Accordingly, all Parties face substantial risks in proceeding forward with the litigation and, for these reasons, the settlement should be found to be fair and reasonable.

**C. The Agreement was the Product of Arm's-Length Bargaining Devoid of Fraud or Collusion**

Finally, it cannot be disputed that the Agreement was the product of legitimate bargaining between experienced counsel which was devoid of any semblance of fraud or collusion. Indeed, the Parties were able to resolve this controversy, in large part, because of the hard work and experience of their respective attorneys. Throughout the process, the Parties' respective counsel zealously advocated on behalf of their clients over the course of several months, from negotiating the amount of the settlement, to the terms and conditions of same. Far from the product of fraud or collusion, the Agreement constitutes an effort by experienced labor and employment counsel for all Parties to resolve the dispute under the best possible circumstances for their respective clients. Further, Plaintiffs are satisfied with the settlement amount and voluntarily and willingly entered into the Agreement without coercion or duress. Plaintiffs were represented by experienced counsel.

Levin-Epstein & Associates, P.C. has obtained favorable decisions in wage-and-hour cases that have set precedent in this area of law. *See Martinez Montoya v. Havana Central NY 2, LLC et al*, 2024 WL 871206 (S.D.N.Y. 2024) (successfully opposing motion to dismiss, and objections to Magistrate Judge's report and recommendation, on the standard for pleading willfulness under the FLSA); *Singh v. Lintech Electric, Inc.*, 2022 WL 1422311, at *1 (E.D.N.Y. 2022), *report and recommendation adopted*, 2022 WL 2158748 (E.D.N.Y. 2022) (successfully opposing motion for leave to amend complaint, and securing over $15,000 in sanctions for discovery violations); *Arevalo Fajardo et al v. WB Maintenance & Design Group Inc. et al.*, Case No.: 21-cv-5236 (E.D.N.Y. 2021) (securing preliminary injunction on behalf of a group of Plaintiff in an FLSA case where Plaintiff were retaliated on the basis of their immigration status, and assaulted); *Singh v. Lintech Elec., Inc.,* 2021 WL 1062533, at *3 (E.D.N.Y. 2021) (securing dismissal of fraudulent conveyance actions, and cancellation of *lis pendens*, filed in FLSA action); *Suarez et al v. Brasserie Felix, Inc. et al*, Case No. 19-cv-07210, Dckt. No. 59 (hired by Plaintiff's counsel to facilitate resolution in bankruptcy proceedings and secured $800,000 settlement on behalf of twelve (12) FLSA Plaintiff); *El Aalaoui v. Lucky Star Gourmet Deli Inc.,* 2021 WL 22787, at *1 (S.D.N.Y. 2021) (successfully vacating default judgment entered against FLSA defendants in the amount of $231,660); *Rivera v. Crabby Shack, LLC,* 2019 WL 8631861, at *5 (E.D.N.Y. 2019) (successfully arguing motion to enforce and approve settlement agreement on behalf of defendants)*; Pugh v. Meric*, 2019 WL 2568581, at *2 (S.D.N.Y. 2019) (post-bench trial order issued by the Hon. Judge Denise Cote, holding that the "wage notice penalty" in NYLL § 198(1)(1-b), by its very terms, does not mandate the imposition of damages); *Pugh v. Meric*, 2019 WL 3936748, at *5 (S.D.N.Y. 2019) (post-bench trial order reducing plaintiff's attorneys' fees award of $8,000 to $800); *Reyes v. The Picnic Basket, Inc.,* Case No. 18-cv-140, Dckt. No. 39, at *3-4 (S.D.N.Y. 2018) (successfully opposing Plaintiff's motion for conditional certification).

Moreover, the settlement protects Plaintiffs from the risk of default by requiring Defendants to execute the Agreement providing for the entry of Confessions of Judgment, as well as the recovery of attorneys' fees and costs in the event of default. Accordingly, the Agreement should be approved by the Court.

**III.    Plaintiffs' Request for Attorneys' Fees and Costs Is Reasonable**

Plaintiffs bear the burden of proving the reasonableness of the fees sought. *See Savoie v.*

*Merchs. Bank*, 166 F.3d 456, 463 (2d Cir. 1999). "Although courts may elect to award fees by considering either the lodestar method – the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended – or the percentage method – a percentage of the total amount recovered by the Plaintiff – '[t]he trend in [the Second] Circuit is toward the percentage method.'" *Perez v. Ultra Shine Car Wash, Inc.*, 2021 WL 1964724, at *6 (S.D.N.Y. 2021) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). But even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Id.* (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)); *see also Guareno v. Vincent Perito, Inc.*, 2014 WL 4953746, at *2 (S.D.N.Y. 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015). The Court must also determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012). Courts can and should exercise broad discretion in determining a reasonable fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The method for determining reasonable attorney's fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008). In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits. This is known as the "forum rule." *See Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174-175 (2d Cir. 2009). Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee. *See Arbor Hill*, 522 F.3d at 190.

Plaintiff respectfully recommends an hourly rate of $500 for the services of Joshua D. Levin-Epstein ("Mr. Levin-Epstein"), $350 for the services of Eunon Jason Mizrahi ("Mr. Mizrahi"), and $100 for the services of Plaintiff's counsel's paralegals, Hugo Espinoza and Alexis Abrego.[2] Other Courts have approved Mr. Levin-Epstein & Mr. Mizrahi's proffered billing rates. *See Dorson v. NYU Langone Hospital-Brooklyn,* Case No. 1:21-cv-04286-RER at 1/23/2023 Order (S.D.N.Y. 2023); *Christian v. MH Plumbing & Mechanical Corp. et al,* Case No. 1:22-cv-04774-BMC at Dckt. No. 21 at * 4 (E.D.N.Y. 2023); *Sims v. Crown Waste Corp. et al*, Case No. 1:22-cv-06047-BMC at Dckt. No. 23 at * 4 (E.D.N.Y. 2023); *Hernandez v. Yonkers Brewing Company LLC et al*, Case No. 7:21-cv-06951-PED at Dckt. No. 50 (S.D.N.Y. 2022); *Hoyos v. Milio et al,* Case No. 1:22-cv-01982-GWG at Dckt. No. 54 (S.D.N.Y. 2022); *Simmons v. Allied Universal Security Services, LLC et al*, Case No. 1:22-cv-03526-GHW at Dckt. No. 21 (S.D.N.Y. 2022); *Jones v. Questfleet LLC et al*, Case No. 1:21-cv-04042-TAM at 7/28/2022 Order (E.D.N.Y. 2022); *Stein v. Greenfeld et al,* Case No. 20-cv-01929-ARR-CLP, Dckt. No. 25 at *6-7 (E.D.N.Y. 2020); *Laureano-Capellan v. Chirichella et al,* Case No. 20-cv-00360-RER, July 15, 2020 Dckt. Entry (E.D.N.Y. 2020); *Feliciano v. Yoon et al,* Case No. 18-cv-06361-DLI-JO, March 27, 2020 Dckt. Entry (E.D.N.Y. 2020). Such fees are also within the range of reasonable rates for similarly

---

[2] A true and correct copy of Plaintiff's counsel's contemporaneous time and billing records, documenting each attorneys' hourly rate, hours expended, and tasks worked on, is annexed hereto as Exhibit "B".

experienced attorneys. *See Guerra v. Trece Corp.,* 2021 WL 1893593, at *2 (S.D.N.Y. 2021) (approving hourly rate of $450 for partner); *Meide Zhang v. Liang Zhang*, 2020 WL 9256464, at *6 (S.D.N.Y. 2020), *report and recommendation adopted as modified sub nom*. *Zhang v. Zhang*, 2021 WL 1154084 (S.D.N.Y. 2021) (approving $450 hourly rate as "reasonable"); *Salazar v. 203 Lena Inc*., 2020 WL 5627118, at *11 (S.D.N.Y. 2020), *report and recommendation adopted,* 2020 WL 6257158 (S.D.N.Y. 2020) (recommending hourly rate of $500).

A brief biography of each attorney and paralegal who performed billed work in this matter is set forth more fully below.

### A. Joshua D. Levin-Epstein, Esq.

Joshua D. Levin-Epstein, Esq. is the founder and managing member of Levin-Epstein & Associates, P.C., and has been in practice since 2006. Mr. Levin-Epstein's billed hourly rate for this matter is $500 per hour, which is his standard billing rate for wage-and-hour matters paid on an hourly basis.

Prior to founding the firm, Mr. Levin-Epstein was part of the Business Solutions, Governance, Restructuring & Bankruptcy practices at international and national law firms where he represented constituents in complex litigation and transactional matters. Mr. Levin-Epstein also served as Law Clerk to the Honorable Alan H.W. Shiff in the United States Bankruptcy Court for the District of Connecticut (Bridgeport Division). Mr. Levin-Epstein received a B.S. in Foreign Service from the Edmund A. Walsh School of Foreign Service at Georgetown University. At Georgetown University, Mr. Levin-Epstein received several merit-based scholarship awards. He received his J.D. from The University of Michigan Law School. Mr. Levin-Epstein previously chaired the Labor and Employment Subcommittee for the New York City Bar Association's Hospitality Law Committee. He authored a White Paper on the history of the development of local Community Boards in New York City.

### B. Eunon Jason Mizrahi, Esq.

The undersigned, Eunon Jason Mizrahi, Esq., is a partner at Levin-Epstein & Associates, P.C. At the time Plaintiff's engagement agreement was signed, the undersigned's hourly rate for wage-and-hour was $350 per hour.

Mr. Mizrahi earned his B.A. from the University of Maryland in 2012, where he majored in Persian studies and minored in Israeli and Middle Eastern studies. Mr. Mizrahi earned his J.D. from Brooklyn Law School in 2016. Following law school, Mr. Mizrahi served as in-house counsel and human resources manager for a wholesale baking company headquartered in the Bronx, with global operations in China, South Korea and the United States. He subsequently practiced as an associate at a boutique law firm concentrating in labor and employment law.

Mr. Mizrahi first worked as an associate at Levin-Epstein & Associates, P.C. in 2018, then as a partner, beginning in January 2026. Mr. Mizrahi has secured precedent-setting decisions in NYLL and FLSA actions. *See Martinez Montoya v. Havana Central NY 2, LLC et al*, 2024 WL 871206 (S.D.N.Y. 2024) (successfully opposing motion to dismiss, and objections to Magistrate

6

Judge's report and recommendation, on the standard for pleading willfulness under the FLSA); *Singh v. Lintech Electric, Inc*., 2022 WL 1422311, at *1 (E.D.N.Y. 2022), *report and recommendation adopted*, 2022 WL 2158748 (E.D.N.Y. 2022) (successfully opposing motion for leave to amend complaint, and securing over $15,000 in sanctions for discovery violations); *Arevalo Fajardo et al v. WB Maintenance & Design Group Inc. et al*., Case No.: 21-cv-5236 (E.D.N.Y. 2021) (securing preliminary injunction on behalf of a group of Plaintiff in an FLSA case where Plaintiff were retaliated on the basis of their immigration status, and assaulted); *Singh v. Lintech Elec., Inc.,* 2021 WL 1062533, at *3 (E.D.N.Y. 2021) (securing dismissal of fraudulent conveyance actions, and cancellation of *lis pendens*, filed in FLSA action); *Suarez et al v. Brasserie Felix, Inc. et al*, Case No. 19-cv-07210, Dckt. No. 59 (hired by Plaintiff's counsel to facilitate resolution in bankruptcy proceedings and secured $800,000 settlement on behalf of twelve (12) FLSA Plaintiff); *El Aalaoui v. Lucky Star Gourmet Deli Inc.,* 2021 WL 22787, at *1 (S.D.N.Y. 2021) (successfully vacating default judgment entered against FLSA defendants in the amount of $231,660); *Rivera v. Crabby Shack, LLC,* 2019 WL 8631861, at *5 (E.D.N.Y. 2019) (successfully arguing motion to enforce and approve settlement agreement on behalf of defendants)*; Pugh v. Meric*, 2019 WL 2568581, at *2 (S.D.N.Y. 2019) (post-bench trial order issued by the Hon. Judge Denise Cote, holding that the "wage notice penalty" in NYLL § 198(1)(1-b), by its very terms, does not mandate the imposition of damages); *Pugh v. Meric*, 2019 WL 3936748, at *5 (S.D.N.Y. 2019) (post-bench trial order reducing plaintiff's attorneys' fees award of $8,000 to $800); *Reyes v. The Picnic Basket, Inc.,* Case No. 18-cv-140, Dckt. No. 39, at *3-4 (S.D.N.Y. 2018) (successfully opposing Plaintiff's motion for conditional certification).

Mr. Mizrahi has also represented Plaintiff in sophisticated class-action litigation (*see, e.g., Dou v. TD Bank, N.A*., (Case No. 23-cv-48800) (S.D.N.Y. 2026); *Lian Li et al v. Walsh et al* (Case No.: 16-cv-8187) (S.D. Fla. 2020); *LI et al v. PNC Bank NA et al* (Case No.: 19-cv-80332) (S.D. Fla. 2020); *In re 160 Royal Palm, LLC* (Case No.: 18- 19441) (U.S. Bankr. Ct., S.D. Fla. 2020)), as well as in contested banking litigation matters. *See Nabatian v. Sterling National Bank et al*, 2020 WL 1307280, 4 (N.Y. Sup Ct., Queens County 2020).

### C.  Claudia Kim

Claudia Kim ("Ms. Kim") has worked as a paralegal at Levin-Epstein & Associates, P.C. since approximately May 2025. Ms. Kim's proposed billing rate is $100 per hour. Ms. Kim graduated from Barnard College, Columbia University in 2025 with a Bachelor of Arts in English, where she graduated with a 4.08 GPA.

Prior to joining Levin-Epstein & Associates, P.C., Ms. Kim served as a Pro Bono Intern at the Center for Reproductive Rights, where she managed large data sets related to case referral tracking, law firm practice areas, and pro bono partnerships, and assisted in maintaining and tracking financial data. Ms. Kim also worked as a Coordinating Intern at Legal Outreach, where she provided administrative and organizational support to a legal education nonprofit, coordinated with attorneys and law professors regarding programming and events, and assisted with donor and partner communications.

Ms. Kim also has extensive writing, editing, and leadership experience through her work

with The Columbia Daily Spectator, where she served as a Senior Copy Editor overseeing editorial associates and reviewing published articles. She additionally served as a Head Writing Fellow at the Barnard Writing Center, where she mentored students in analytical writing and thesis development and conducted writing workshops and outreach initiatives.

### D. A Computation of the Total Hours Expended by Counsel

Applying the percentage method, Plaintiff respectfully requests an award of attorneys' fees in the amount of $29,783.20.

Plaintiff further requests an award of $650.40 for costs incurred in filing fees ($405), service of process ($222.60), and mailing fees ($22.80). Proof of disbursements substantiating these fees are annexed hereto as Exhibit "C".

Based on this, the requested attorneys' fees and costs of $30,433.60 should be found reasonable and permitted. The parties respectfully request that the Court approve the settlement as fair and reasonable and So Order the proposed Stipulation to Dismiss the case.

### IV.    Conclusion

In sum, the settlement is fair and reasonable, providing Plaintiffs with a substantial recovery protected against the uncertainties and costs of trial, and should be approved by the Court, dismissing this action with prejudice.

We thank the Court for its time, consideration, and attention to this matter.


Respectfully submitted,

**Wilson Elser Moskowitz Edelman & Dicker LLP**


Celena Mayo
Aaron Bengart